UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**

**VERSUS**

**ARON WINTER MOSQUERA-CASTRO**

**CRIMINAL ACTION**

**NO. 17-13-JWD-RLB-4**

**RULING AND ORDER**

Before the Court is a *Motion to Authenticate T-III Recordings* ("*Motion*") (Doc. 463) filed by the United States (the "Government"). The Government filed a supplemental memorandum in support of its *Motion*. (Doc. 697.) Defendant Aron Winter Mosquera-Castro ("Defendant") did not file a response. On August 18, 2020, a hearing was held on the *Motion*. (Docs. 702, 703.) Following the hearing, the parties filed additional briefs. (Docs. 701, 706.)

The Court has carefully considered the law, the facts in the record, and arguments and submissions of the parties and is prepared to rule. For the reasons discussed below, the *Motion* is granted.

**I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND AND PARTIES' ARGUMENTS**

**A. Introduction**

This case concerns the activities of an alleged large-scale drug trafficking organization operating in East Baton Rouge and Ascension Parishes. During the Government's investigation into the organization, Judge Brian Jackson and Judge James Brady authorized the wiretaps of three target telephones beginning on or about January 25, 2016 and ending April 3, 2016. As a result of these wiretap interceptions, Defendant was allegedly identified as a member of the drug-trafficking organization and was arrested.

Defendant has been indicted on one count of Participating in a Heroin Distribution Conspiracy, five counts of Unlawful Travel in Aid of a Racketeering Enterprise, and seven counts of Unlawfully Using a Communication Facility in Connection with Drug Trafficking Offenses. (Doc. 1.) Defendant is the only remaining defendant in this multi-defendant, multi-charge case.

### B.  The Instant Motion and Hearing

Defendant's trial is set to start on October 26, 2020. (Doc. 683.) The Government intends to introduce the recorded conversations from the wiretap interceptions at trial. (Doc. 463-1 at 2.) The instant motion centers on the authenticity of those recordings.

In its initial motion, the Government requested a hearing in order to meet its burden and establish the authenticity of the wiretap recordings. (*See* Doc. 463 at 2.) Defendant offered no argument in opposition to that request. The Government then filed a supplemental memorandum seeking to introduce the prior testimony of Iberville Parish Sheriff's Deputy and Drug Enforcement Administration ("DEA") Task Force Officer Timothy Fabre. (Doc. 697.)  This transcript was received into evidence without objection at the hearing.[1]

A hearing on the *Motion* was held on August 18, 2020, during which the Government called retired DEA Agent Steve Nelson to testify as to the authenticity of the wiretap recordings. Nelson was System Administrator for Telecommunications Interceptions at the DEA for 21 years before he retired, including being the System Administrator for the T-III wiretaps in this case.  He testified that his job responsibilities were to initiate wiretaps after receiving federal orders, to maintain the equipment, and then to turn the recordings over to the relevant agency upon completion of the wiretap. He also testified about the training and education he received, as well as the technical working of the recording equipment and the procedure for handling wiretap evidence.

---

[1] While there is no transcript, all of the following facts are taken from the recording of the testimony given at the hearing.

2

The Government also introduced the transcript of Fabre's testimony from a prior *Motion to Suppress Evidence and Statements* hearing to establish the identity of Defendant's voice on the intercepted communications.[2] Fabre was the lead case agent in the investigation that lead to the indictment of Defendant. (Gov. Ex. 5, Doc. 628 at 6:23-7:2.) During the course of that testimony, he described the face-to-face conversation he had with Defendant. (*Id.* at 26:13-27:24.) He also testified that he listened to some of the intercepted calls and corroborated Defendant's conversations by comparing his statements in those conversations with his actions on numerous occasions as will be discussed in more detail below. Defendant presented no witnesses.

### C. Post-Hearing Briefing

Defendant opposes the *Motion* and argues that the Government has failed to carry its burden to prove authenticity of the wiretaps with the testimony of Nelson and the transcript of Fabre's prior testimony. (Doc. 701.) Defendant relies on the four factors set out in *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977) to demonstrate that the Government has not carried its burden as required by the jurisprudence. First, Defendant argues that the Government failed to prove the competency of the operator. (Doc. 701 at 3.) Second, Defendant argues that the Government has presented no evidence demonstrating the fidelity of the recording equipment. (*Id.*) Third, Defendant contends that the Government failed to establish that the recordings were unaltered. (*Id.* at 3-4.) Fourth, Defendant claims that the Government's witnesses failed to identify a voice on the recordings as that of Defendant. (*Id.* at 4-5.)

In response, the Government argues that it has carried its burden and satisfied all four of the *Biggins* factors. (Doc. 706.) As to the first factor, the Government contends that Nelson's testimony established that he was a competent operator of the recording equipment. (*Id.* at 3.) It

---

[2] The *Motion to Suppress Evidence and Statements* hearing was held on May 17, 2018. (Doc. 367.) After that hearing, the Court denied Defendant's *Motion to Suppress*. (Doc. 392.)

3

further argues that Defendant incorrectly identified the telephone companies as the operator of the wiretap, when they are only the provider of telecommunication services. (*Id.*) As to the second factor, the Government also relies on Nelson's testimony to establish the fidelity of the recording equipment. It reiterates Defendant's misunderstanding as to who the operator of the wiretap is and again identifies Nelson as the operator. (*Id.* at 3-4.) As to the third factor, the Government contends that it has proven an absence of material alterations to the recordings through the testimony of Nelson. (*Id.* at 4.) Finally, as to the fourth factor, the Government argues that Fabre's prior testimony establishes the identification of Defendant's voice on the wiretap recordings. (*Id.* at 4-6.)

## II.     RELEVANT LAW

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *see also United States v. Singh*, 922 F.2d 1169, 1174 (5th Cir. 1991) (applying Rule 901(a) in case involving tape recordings of conversations). "[C]onclusive proof of authenticity is not a prerequisite to the admissibility of disputed evidence." *Singh*, 922 F.2d at 1174 (citing *United States v. Lance*, 853 F.2d 1177 (5th Cir. 1988)).

"The court properly admits a sound recording into evidence only when the party introducing it carries its burden of going forward with foundation evidence demonstrating that the recording as played is an accurate reproduction of relevant sounds previously audited by a witness." *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977). The Fifth Circuit has explained:

> To establish authenticity [of an audio recording], the Government must demonstrate: 1) the operator's competency, 2) the fidelity of the recording equipment, 3) the absence of material alterations, and 4) the identification of relevant sounds or voices. *See United States v. Biggins*, 551 F.2d 64, 66 (5th Cir.

4

> 1977); *United States v. Stone*, 960 F.2d 426, 436 (5th Cir. 1992). The party seeking to establish authenticity need not meet all the factors set out in *Biggins,* if "... upon independent examination, the district court is convinced that the 'recording accurately reproduces the auditory experience.' " *United States v. Buchanan,* 70 F.3d 818, 827 (5th Cir. 1995) (quoting *Stone*, 960 F.2d at 436). [The Fifth Circuit] reviews the district court's determination of authenticity of the recordings for abuse of discretion. *Id.*

*United States v. Green*, 324 F.3d 375, 379 (5th Cir. 2003) (the "*Biggins* factors"). Elaborating on this Court's discretion, the Fifth Circuit has also stated:

> Nevertheless, the trial judge has broad discretion in determining whether to allow a recording to be played before the jury. The standards for foundation evidence we adopt serve the paramount purpose of ensuring the accuracy of the recording. Strict compliance with the government's particularized burden is the preferred method of proceeding. If the trial judge independently determines that the recording accurately reproduces the auditory evidence, however, his discretion to admit the evidence is not to be sacrificed to a formalistic adherence to the standard we establish. If there is independent evidence of the accuracy of the tape recordings admitted at trial, we shall be extremely reluctant to disturb the trial court's decision even though at the time that decision was made the government had not carried its particularized burden of going forward.

*Biggins*, 551 F.2d at 66–67.

Finally, with respect to the last factor—identification of the relevant sounds or voices—Fed. R. Evid. 901(b)(5) provides:

> (b) **Examples**. The following are examples only — not a complete list — of evidence that satisfies the requirement: . . . (5) **Opinion About a Voice**. An opinion identifying a person's voice — whether heard firsthand or through mechanical or electronic transmission or recording — based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

The Fifth Circuit has stated that "Fed. R. Evid. 901(b)(5) makes clear that the witness's familiarity with the voice sought to be identified, whether the familiarity developed before or after the time of the recording, is sufficient to ensure reliable voice identification." *Biggins*, 551 F.2d at 68.

## III. DISCUSSION

The Court finds the Government prevails in the instant motion on two grounds. First, all the prerequisites to authenticating a recording have been established by the Government. *See Stone*, 960 F.2d at 436; *United States v. Johnson*, 943 F.3d 214, 221 (5th Cir. 2019). The evidence indicates that the equipment was in sufficient working order and that Nelson, a competent individual experienced in the use of this type of equipment, operated it. The evidence also demonstrates an absence of material alterations to the recordings. Finally, the relevant voice in the recordings (Defendant's) was identified by Fabre.

Second, even if the Government had not satisfied each *Biggins* factor, the authentication of the recordings is established because the Court is "convinced that the 'recording[s] accurately reproduce[] the auditory experience.' " *United States v. Buchanan*, 70 F.3d 818, 827 (5th Cir. 1995) (citation omitted).

### A. *Biggins* Factors

As discussed above, the Fifth Circuit has set forth the following four factors to be used in establishing the authenticity of an audio recording: 1) the operator's competency, 2) the fidelity of the recording equipment, 3) the absence of material alterations, and 4) the identification of relevant sounds or voices. *See Biggins*, 551 F.2d at 66; *Stone*, 960 F.2d at 436. Here, the Government produced sufficient evidence to authenticate the recordings as it satisfied each *Biggins* factor.

#### 1. Operator's Competency

As to the first factor, the Court finds that the Government has established the operator's competency. Nelson was the operator of the recording equipment, and his testimony demonstrates he was competent to operate the equipment.

First, Defendant incorrectly categorizes the telecommunications companies as the operator of the recording equipment. Nelson testified that the telecommunications companies program their equipment to send the recordings to the DEA; the DEA is programmed to receive the recordings. He also stated that there are several "operators" at each telecommunications company, but that he did not know their identities. From this, Defendant wrongfully draws the conclusion that the telephone companies involved are the operators of the recording equipment, and as such, Nelson was not. Defendant cited to no specific case supporting its position, and the Court was unable to locate one.

In determining whether to classify the telecommunication companies or the DEA and Nelson as "operators" of the recording equipment, this Court turns to the legislative history of the Wiretap Act, prior caselaw, and the text of the Act. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, also known as the Wiretap Act, is codified at 18 U.S.C. §§ 2510—2523. Congress passed the Wiretap Act as part of the Electronic Communication Privacy Act ("ECPA") to protect potential intrusions on individual privacy that the Fourth Amendment did not address. S. Rep. No. 99–541, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3557. The Wiretap Act prohibits the unauthorized interception of wire, oral, or electronic communications.

While the Wiretap Act does not define the term "provider," Courts have interpreted the statute to apply to providers of a communication service, such as telephone companies. *See Garcia v. City of Laredo*, 702 F.3d 788, 792 (5th Cir. 2012). This interpretation is further supported by the legislative history of the ECPA and the Wiretap Act, as Sen. Rep. No. 99-541 (1986) states "telephone companies and electronic mail companies are providers of electronic communication services." S. Rep. No. 99–541, at 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3568.

Additionally, the text of the Act itself supports this definition as it consistently refers to "providers" as the provider of the electronic communication services. For example, § 2518 requires that orders approving the interception of communications "direct that a *provider* of wire or electronic communication service . . . furnish the applicant forthwith all information, facilities, and technical assistance necessary to accomplish the interception *unobtrusively* and with *minimum interference with the services that such service provider* . . . is according the person whose communications are to be intercepted." 18 U.S.C.A. § 2518(4) (West 1998) (emphasis added). Further, "any *provider* of wire or electronic communication service . . . or other person furnishing such facilities or technical assistance shall be compensated therefor by the applicant for . . . providing such facilities or assistance." *Id*.

This language from the Wiretap Act indicates the separate nature of the duties of a "provider," who merely facilitates electronic communications, and the "operator," who is actually intercepting and recording the information. Based on the legislative history of the Act, prior caselaw, and the text of the Act, the Court finds that the telecommunications companies in this case were "providers" and the DEA and Nelson were "operators."

Second, Defendant's argument that the Government failed to present any evidence to identify the operator(s) of the recording equipment and to establish the operator's competency is to no avail. As determined above, Nelson was the operator of the recording equipment and his testimony demonstrates he was a competent operator. At the *Motion* hearing, Nelson testified as to his extensive training, experience, and skill in the installation and operation of electronic surveillance equipment. Specifically, he testified that he installed a little more than 2,000 wiretaps in his 21-year career at the DEA. He also described the storage process, detailing how the

intercepted conversations in this case were saved onto three blu-ray discs in an unalterable format. As such, the first *Biggins* factor weighs in favor of authentication.

### 2. Fidelity of Recording Equipment

As to the second factor, the Court finds that the Government has established the fidelity of the recording equipment. Again, Defendant wrongfully identifies the telecommunications company as the operator of the recording equipment. As discussed above, Nelson was the operator. And at the hearing, Nelson testified that part of his job responsibilities included maintaining the recording equipment in working order. He further testified that all communications were captured and recorded as they were intercepted and then saved onto the three blu-ray discs.

Therefore, Defendant's argument that the Government failed to produce evidence of the fidelity of the recording equipment is contradicted by the record. Nelson's testimony established the fidelity of the recording equipment and so this factor weighs in favor of authentication.

### 3. Absence of Material Alterations

As to the third factor, Nelson's testimony demonstrates the absence of material alterations to the recordings.

Defendant is correct in his contention that he need not affirmatively suggest that a recording has been materially altered as "the party seeking to introduce such evidence has the burden of going forward." (Doc. 701 at 4 (citing *Biggins*, 551 F.2d at 67-68).) And the Court finds that the Government has met its burden in this case.

Although Defendant claims that the Government offered no evidence that the recordings could not be altered prior to the Government's receipt of the discs, this claim is inconsistent with the evidence. Nelson directly testified that the recordings had not been altered and could not be altered in any way. He testified that all the intercepted communications were recorded as they were

9

intercepted and then were saved and stored on three blu-ray discs in an unalterable format. He further stated that, given the format of the discs, no one, including the monitors of the communications, could have altered the contents of the communications that he saved to the discs, as it would make the discs unusable. He also identified the three blu-ray discs at the hearing as the ones he personally made based on his handwritten initials on the discs themselves. As such, this factor also weighs in favor of authentication.

### 4. Identification of Relevant Voices

As to the fourth factor, the Court agrees with the Government. Fabre's testimony establishes the identification of Defendant's voice on the wiretap recordings.

Defendant argues that the Government has presented no evidence of anyone who listened to all the calls it seeks to authenticate. However, Fabre's testimony shows that he listened to some of the intercepted communications. Further, it is not necessary to authenticate each individual conversation. *United States v. Cuesta*, 597 F.2d 903, 915 (5th Cir. 1979).

In addition, Fabre's testimony provides strong and credible evidence identifying the relevant voice on the intercepted communications. The Fifth Circuit has stated that "Fed. R. Evid. 901(b)(5) makes clear that the witness's familiarity with the voice sought to be identified, whether the familiarity developed before or after the time of the recording, is sufficient to ensure reliable voice identification." *Biggins*, 551 F.2d at 68. Here, Fabre testified that he had a face to face conversation with Defendant during which he spoke directly with Defendant for an hour or more. (Gov. Ex. 5, Doc. 628 at 26:13-27:24.) This is sufficient to meet the requirements of Rule 901(b)(5). *See, e.g.*, *Cuesta*, 597 F.2d at 915 (holding Rule 901(b)(5) requires only that the witness have "some familiarity with the voice which he identifies," and, in that case, prior conversations with the witnesses were enough to satisfy this Rule).

Additionally, the Fifth Circuit has repeatedly held that other evidence that is consistent with the recorded conversations may also help establish the identity of a voice. *See, e.g.*, *United States v. Franklin*, 561 F.3d 398, 406 (5th Cir. 2009). In this case, Fabre testified that he listened to some of the calls and corroborated Defendant's statements in the recordings by comparing his statements with his actions on numerous occasions. For example, Fabre testified that based on intercepted communications between Defendant and Jason Muse, agents learned that Defendant would be delivering heroin to Muse on February 5, 2016. (Gov. Ex. 5, Doc. 628 at 9:11-10:7.) Defendant was then observed by agents arriving in the Baton Rouge area in a Toyota Camry, and meeting with Muse consistent with the intercepted communications between Defendant and Muse. (*Id.* at 10:8-11:24.)

Fabre also testified that based on intercepted communications, agents learned that Defendant would be returning to deliver more heroin on February 10, 2016 and on February 23, 2016. (*Id.* at 12:5-14:15; 15:10-16:2.) On those days, Defendant did in fact arrive in the Baton Rouge area in the same Toyota Camry and was observed by agents arriving at the agreed upon meeting location as discussed in the intercepted communications. (*Id.*)

Fabre further testified that intercepted communications revealed that Defendant would be again travelling to the Baton Rouge area on or about March 25, 2016. (*Id.* at 16:7-17:2.) At that time, agents again observed Defendant arriving in the Baton Rouge area in the same Toyota Camry as discussed in the intercepted communications. (*Id.* at 17:9-18:16.) After Defendant met with Muse, a traffic stop was conducted by the Iberville Parish Sheriff's Office wherein Defendant was found to be in possession of approximately $43,000 in drug proceeds. (*Id.* at 19-24.) The Toyota Camry Defendant was driving on all of his trips to the Baton Rouge area was registered to him. (*Id.* at 29-30.)

11

Based on his face to face interaction with Defendant and other evidence that is consistent with the intercepted communications, Fabre has sufficiently identified Defendant's voice. Thus, this factor weighs in favor of authentication.

In sum, all four *Biggins* factors weigh in favor of authentication. Therefore, the Government met its burden to show the recordings were properly authenticated because it "produce[d] evidence sufficient to support a finding that the item[s] [are] what the proponent claims [they are]." Fed. R. Evid. 901(a).

### B. Trial Court's Discretion

Even if the Government had not satisfied each *Biggins* factor, the recordings would still be admissible if "… upon independent examination, the district court is convinced that the recording[s] accurately reproduce[ ] the auditory experience." *Green*, 324 F.3d at 379. Such a finding is supported here.

Defendant cites to *Biggins*, *Green*, and *Johnson*, in support of his argument that the fourth *Biggins* factor (identification of relevant voices) is not met. However, having reviewed the cases, the Court finds that Defendant's reliance is misplaced. These three cases address and demonstrate the trial court's great discretion in authenticating recordings. They do not support Defendant's argument that the fourth *Biggins* factor is not met.

Further, Defendant's argument that the fourth factor "weighed in favor of authentication in [*Johnson*, *Biggins*, and *Green*] despite the United States' shortcomings in the first three factors" is incorrect. (Doc. 701 at 4.)  In *Johnson*, all four *Biggins* factors were met. In *Biggins* and *Green*, even though only two of the four factors were met, the Fifth Circuit still held that the district court did not abuse its discretion in authenticating the calls.

Finally, Defendant's argument that the recordings should not be authenticated because the Government did not provide the same level of evidence as in *Green*, *Biggins*, and *Johnson* also fails. The case at bar is like *Johnson* in that all four *Biggins* factors have been satisfied, but even if they had not been, *Green* and *Biggins* support authentication.

In *Green*, the defendant challenged the admission of intercepted jail calls because the government "did not adequately demonstrate how the recording equipment worked, who worked it, what kind of training the operator had, whether the equipment was reliable, and when the recordings were made." *Johnson*, 943 F.3d at 221 (*citing Green*, 324 F.3d at 380). The Fifth Circuit held the district court did not abuse its discretion in determining the calls were authenticated because,

> [a]fter reviewing the record, we are persuaded that the intercepted telephone recordings accurately reproduce the auditory experience. As one of the case agents overseeing the wiretap operation, [the witness] possessed knowledge of the reliability of the intercepted telephone recordings. Having met [the defendant], [the witness] was also able to identify his voice.

*Id.* Additionally, agents had listened to the calls and "corroborated [the defendant's] conversations with his actions on numerous occasions." *Id*. The court in *Johnson* followed the analysis of *Green*, even though all four *Biggins* factors were met. Like the witnesses in *Green* and *Johnson*, Fabre similarly identified Defendant here, based on his previous interaction with Defendant and the content of the intercepted calls as discussed in the preceding section.

In *Biggins*, the Government's proffer of evidence was accepted because of the close correspondence of witnesses' testimony about the recorded conversation and the sound recording of that conversation. *Biggins*, 551 F.2d at 68. The Fifth Circuit held the recordings admissible on this basis even though the Government failed to establish operator competency and lack of material alterations to the recordings. *Id.*

Again, the Government in this case has satisfied all four factors, unlike in *Biggins*. Further, "conclusive proof of authenticity is not a prerequisite to the admissibility of disputed evidence." *Singh*, 922 F.2d at 1174 (citing *United States v. Lance*, 853 F.2d 1177 (5th Cir. 1988)). In sum, even if all four *Biggins* factors were not met (which they have been), the Court would exercise its discretion and find that the records were authenticated. For these and the above reasons, the Government's motion is granted.

### IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that the Government's *Motion to Authenticate T-III Recordings* (Doc. 463) is **GRANTED**.

Signed in Baton Rouge, Louisiana, on October 1, 2020.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**